Scott, J.
The plaintiff in this case sues as first indorsee of a bill of exchange, alleging indorsement before maturity, for full value, and protest for non-payment at maturity. The bill is set forth as follows:
“ $3,400. Circleville, O., September 2,1854.
“ One hundred days after date, or whenever thereafter presented at the office of Sturges & Ellis, New York, pay to the order of H. K. Lawrence, cashier,/thirty^-four hundred dollars for value received, first of same tenor and date being unpaid; acceptance waived.
“ J. O’B. Renick,
“ John Cochran,
“ J. C. Thompson.
“ To A. G-. Allen, Esq., New York.”
To the case thus made, an answer is put in by defendants, stating that on the bill in suit Renick is principal, and Cochran and Thompson sureties, and denying the liability of defendants, by reason of the following facts, which are set up as a bar to the action: That on May 27, 1854, Renick was indebted to the Bank of Circleville (of which H. K. Lawrence, the payee of the bill, was cashier), in the sum of $16,322.15, and that he agreed to pay and did pay this debt in the following manner:
*1. By'bill of exchange on New York for $3,558, at four [533 months, drawn by Renick as principal, and the other defendants as sureties, which was received by the bank, for.......................................................... $3,289 20
2. By the transfer and indorsement to the bank of the promissory note of one Edwin Williams, for $10,000, due March 1, 1855, taken by the bank for............... 8,938 27
3. By check on Renick’s own deposits in that bank...... 4,094 68
Making in the aggregate......................... $16,322 15
The bill on which suit is now brought was a renewal by the same parties of the bill above mentioned, which failed to be paid at maturity.
The answer further avers that the transfer of the Williams note, the giving of said bill on New York, and the cash payment by Eenick’s check, were dependent parts of the same transaction, done *534 in pursuance of one and the same agreement; that the bank’s receiving said note at $8,938.27, when its face called for $10,000, March 1, 1855, was a discounting of said note at a rate of more than six per cent., and was therefore usurious; that the bank had no corporate power to make such a contract, and that as a consequence, the bill of exchange, which was drawn at the same time, and by virtue of the same agreement, was absolutely void in the hands of the bank and of the plaintiff.
A motion was made in the district court to strike this answer from the files, for the reason that it does not set forth facts sufficient to constitute a defense to the action; and this motion, by reservation, comes now before us.
It is insisted by counsel for the defense that the facts stated in the answer show the bill upon which the plaintiff sues to be abso534] lutely void, because the transaction in regard *to the Williams note was usurious; that this tainted and made void the original bill in the hailds of the bank, which had no power .to make such a contract; that the bill now in suit, being but a renewal of the original bill, is equally void, and that being thus void, it could not become valid by assignment to the plaintiff.
It could scarcely be necessary to inquire into the usurious character of the contract alleged in the answer, except for the bearing which the result of that inquiry may have on the question of corporate capacity in the bank. For, admitting that capacity, the plaintiff, as the bona fide indorsee of negotiable paper purchased before due, without notice of the usury, could not be affected thereby. Swan’s Stat. 481. The rule of the common law is the same, unless the usurious note is made void by statute.
The provisions of the charter of the bank which bear upon the question of its corporate capacity to make the contract, are to be found in the second section of the act by which it was incorporated, and read as follows:
“It shall be lawful for said bank to loan money, buy, sell, and negotiate bills of exchange, checks,-and promissory notes, and to discount, upon- banking principles and usages, bills of exchange, post-notes, promissory notes, and other negotiable paper or obligations, for the payment of any sum or sums, of money certain, . . . Provided, that said bank shall not take more than six per cent, per annum in advance on its loans and discounts.” 32 Ohio L. L. 343.
It is claimed in argument that the Williams note was discounted *535, 536 within the meaning of this section, and being so discounted at a rate exceeding that authorized by its charter, the contract by which such unauthorized discount was made, was wholly void.
It is true that the term “ discount ’ ’ may, in a general *sense, [535 be understood as a counting .off, an allowance, or deduction made from a gross sum on any account whatever. But in the section under consideration, this term is evidently used in a more limited and technical sense. It is applied in the proviso to transactions in which the bank may take interest in advance. The power to discount promissory notes, upon banking principles and usages, is given in terms as distinct from, and additional to the qiower to buy, sell, and negotiate promissory notes, which is also given in terms, and is unqualified. The restriction of the proviso was, doubtless, intended to define and prohibit usury by the bank, and must, as we think, be construed as applying only to transactions in the nature of a loan. Usury is defined by Parsons, in his Law of Contracts, to be “the taking of more interest for the use of money than the law allows.” And Bouvier, in his Law Dictionary, under the title •“Usury,” says, “To constitute a usurious contract, the following are the requisites: 1. A loan, express or implied,” etc.
It is well settled that the' bona fide sale of a note, bond, or other security at a greater discount than the limit of legal interest is not, per se, a loan, and the purchaser is not liable to the imputation of usury, although the note may be indorsed by the •seller, and he remains responsible. 7 Pet. S. C. 103; 1 Clarke’s Ch. 38; 2 Parsons on Contracts, 421.
In the case presented in the answer under consideration, the Williams note was transferred by Renick, and received by the bank in payment of a pre-existing bona fide debt owing by Renick to the bank; the note itself was business paper, valid in its inception ; 'it was a marketable commodity; and whatever may have been its value as ascertained by the agreement of the parties, usury can not be predicated of the transaction.
*There was neither a loan nor the continuance of an exist- [536 ing debt, but simply a payment and extinguishment of a previous indebtedness.
The contract does not therefore come within the operation of the proviso contained in the charter, as a loan or a discount.
Had the sale been merely colorable to disguise a loan, the law would be otherwise. But the answer charges nothing of that *537 kind. It represents the transaction as a payment by Renick, and íx purchase by the bank. We think the motion of the plaintiff to strike the answer from the files must prevail.
Bartley, C. J., and Swan, Brinkerhoee, and Bowen, JJ., concurred.